IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–00515–RBJ–KMT

STEVEN T. HADEN,

      Plaintiff,

v.

STEVE GREEN, Warden, Buena Vista Correctional Facility,
GEORGE DUNBAR, Former Warden, Buena Vista Correctional Facility,
WILLIAM BRUNNELL, Associate Warden, Buena Vista Correctional Facility,
TERRI BARTUFF, Former Associate. Warden, Buena Vista Correctional Facility,
R. DANSDILL, Major/Food Service, Buena Vista Correctional Facility,
VICTORIA DENT, Captain/Food Service, Buena Vista Correctional Facility,
DUANE CONNORS, Major/Physical Plant Manager, Buena Vista Correctional Facility,
ARTHUR ORTEGA, Captain/Maintenance, Buena Vista Correctional Facility,
GREGORY SMETHERS, Life Safety Officer, Buena Vista Correctional Facility,
JASON LENGERICH, Major/Custody & Control, Buena Vista Correctional Facility,
LISA BLAND, Captain/Custody & Control, Buena Vista Correctional Facility,
TRACY COLEMAN, Captain/Custody & Control, Buena Vista Correctional Facility,
CHRISTOPHER LAGUE, Sergeant/Security, Buena Vista Correctional Facility
GLYNETTE SMITH, Mental Health Care Practioner/Supervisor, Buena Vista Correctional
Facility,
DAVID M. SHEPARD, M.D., Psychiatric Provider, Buena Vista Correctional Facility,
CHARLEEN CROCKETT, Food Service Director, Colorado Department of Corrections,
CAROL MCCORMACK, Case Manager, Buena Vista Correctional Facility, and
in their individual capacities, as well as each of their Officers, Agents, and Successors, and all
unnamed individuals that directly participated in the wrongs claimed in this action,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on the "Motion for Summary Judgment" filed by

Defendants Green, Dunbar, Brunnell, Bartruff, Dansdill, Legnerich, Connors, Smethers, Bland,

Dent, Coleman, Ortega, Smith, McCormack, Crockett, and Lague.[1]  (Doc. No. 177 [Mot.], filed

November 16, 2011.)  Plaintiff filed his response on March 12, 2012 (Doc. No. 244 [Resp.]), and

Defendants filed their reply on May 24, 2012 (Doc. No. 260 [Reply]).  This motion is ripe for

recommendation and ruling.

**I.      STATEMENT OF THE CASE**

Plaintiff is a pro se prison inmate who has brought four claims pursuant to 42 U.S.C. §

1983 asserting the defendants have violated his civil rights.  (Doc. No. 133, Final Am. Compl.)

In Claim One, Plaintiff alleges that his Eighth Amendment right to be free from cruel and

unusual punishment was violated because certain defendants failed to protect him from sinusitis,

breathing problems, headaches, and nausea caused by allegedly poor air quality and poor air

flow, and exposed him to unsanitary conditions such as a living unit contaminated by insects,

rats, mice, and other vermin, as well as toxins including friable asbestos, lead paint, mold, and

mildew.  (*Id.* at 12–15.)

In Claim Two, Plaintiff alleges that Defendants Smith, Bland, and Shepard were

deliberately indifferent to his serious medical needs because Plaintiff was periodically denied or

delayed access to medications needed to treat his bipolar and anxiety disorders, and had a delay

in access to medication for thyroid and hypertension issues.  (*Id.* at 16–20.)

In Claim Three, Plaintiff alleges that several defendants violated his right to practice his

religion, Messianic Judaism, under the First Amendment and the Religious Land Use and

---

[1]Defendants' Motion and this Recommendation do not apply to Defendant Shepard, who
was served after the Motion was filed.

2

Institutionalized Persons Act ("RLUIPA"), because his kosher food was not properly prepared and he was terminated from the Kosher diet plan in June of 2009. (*Id.* at 21–23.)

In Claim Four, Plaintiff alleges that multiple Defendants retaliated against him for filing grievances and lawsuits by denying him a transfer to a different facility, destroying his property, tampering with his mail, cancelling his religious diet, failing to allow him to go to work on certain occasions, subjecting him to unreasonable strip searches, and/or failed to protect him from retaliation. (*Id.* at 24–27.)

## II.     LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.

*Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## III.   ANALYSIS

### A.   *Preliminary Matter*

In response to Defendants' motions, Plaintiff has submitted 824 pages of handwritten arguments and documents, medical records, reports by various agencies, and other miscellaneous evidence. (*See* Resp.) The Local Rules of Practice for the United States District Court for the

4

District of Colorado provide that, "Every citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made." D.C.COLO.LCivR 7.1.D. Plaintiff's response does not purport to identify specific documents by page number. Thus, Plaintiff has failed to comply with this Court's Local Rules.

In addition, the court has no obligation to sift through Plaintiff's evidence to determine if there is a trial-worthy issue. *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000) (holding that the Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for him."). "[O]n a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004). Plaintiff's response to the motions for summary judgment has entirely failed to meet this burden, and this failure, in and of itself, is sufficient reason to grant summary judgment in favor of Defendants. *See Mitchell*, 218 F.3d at 1199 (holding summary judgment is appropriate when an opposition is "limited to conclusory statements and . . . void of cites to the specific portions" of the record containing relevant evidence).

The court declines to page through hundreds of documents in search of evidence that would support Plaintiff's claims. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these materials, but is not required to do so"). Rather, it is Plaintiff's obligation as a litigant to cull the evidence and identify, with particularity and by page, that which is probative of a particular factual assertion. As the Tenth Circuit in *Adler* observes, the courts play a neutral role in the litigation

5

process, and should be "wary of becoming advocates who comb the record of previously available evidence and make a party's case for it." *Id.* Nevertheless, to the extent possible, Defendants have attempted to reply to Plaintiff's lengthy response, *see* Reply at 2, and this court also has made every effort to locate and cite to exhibits referred to by Plaintiff in his response.

**B.      Plaintiff's Eighth Amendment Claim for Unsafe Living Conditions**

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citation and internal quotations omitted). The state violates the proscription when it "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). Prison officials are required to insure that inmates receive adequate food, clothing, shelter and medical care, for instance. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Likewise, prison officials must take reasonable measures to ensure an inmate's safety while incarcerated in the prison facility. *Id.*

"To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate constitutional protection, and (2) prison officials acted with 'deliberate indifference to inmate health or safety.' " *Reynolds v. Powell*, 370 F.3d 1028, 1031–1032 (10th Cir. 2004) (quoting *Farmer*, 511 U.S. at 834). The question of the defendants' culpability is subjective, but the risk is evaluated on an objective basis. *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998); *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (prison officials must provide reasonably

6

adequate ventilation, sanitation, bedding, hygiene materials, and utilities (*i.e.*, hot and cold water, light, heat, and plumbing)).   An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove both the objective component and subjective component associated with the deficiency.

The objective component of a conditions of confinement claim requires that the objectionable conditions be sufficiently serious so as to "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Shannon v. Graves,* 257 F.3d 1164, 1168 (10th Cir. 2001) (prison inmate complained of exposure to raw sewage).   Alternatively, a condition must be sufficiently serious so as constitute a substantial risk of serious harm.   *Helling,* 509 U.S. at 33–35; *Shannon*, 257 F.3d at 1168.   Jail conditions may be " 'restrictive and even harsh' " without violating constitutional rights.   *Barney*, 143 F.3d at 1311 (quoting *Rhodes*, 452 U.S. at 347).   "[O]nly those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation."   *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ("the Constitution does not mandate comfortable prisons and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation").

The subjective component of an Eighth Amendment claim requires that defendant prison official have a culpable state of mind – that they act or fail to act with deliberate indifference to inmate health and safety.   *Wilson*, 501 U.S. at 297; *Shannon*, 257 F.3d at 1168.   To state a claim premised on prison officials' failure to protect him from harm, a plaintiff must allege that the

Defendants knew of and disregarded an "excessive risk" to his "health or safety." *Farmer*, 511 U.S. at 837; *Reynolds*, 370 F.3d at 1032.

Defendants argue that Plaintiff's Eighth Amendment claim regarding unsafe living conditions fails because Plaintiff cannot meet either the objective or the subjective elements of such a claim.

### 1.      *Objective Element*

Defendants argue the evidence does not show that Plaintiff was actually exposed to "a substantial risk of serious harm" at the Buena Vista Correctional Facility (BVCF) by virtue of the living conditions.  For example, none of the independent inspections performed by the Colorado Department of Public Health and Environment (CDPHE) during the relevant time periods substantiated any of Plaintiff's claims regarding the allegedly unsafe and unsanitary living conditions at BVCF.  (*See* Mot., Ex. A-2 [Aff. of William Brunell], ¶¶ 9–12.)  Likewise, the evidence shows that the BVCF was also audited for accreditation by the American Correctional Association.  The audit included an inspection of environmental conditions and sanitation.  (*Id.*, ¶ 14.)  BVCF was found to be in compliance with ACA national penal standards and received ACA accreditation on January 31, 2011, after an audit that took place July 19–20, 2010.  (*Id.*)

The second Affidavit of Duane Connors, who is the Physical Plant Manager at the BVCF complex, demonstrates that the CDOC hired Walsh Environmental Scientists and Engineers, LLC – an environmental hygienist company with staff members who were certified in Asbestos Certification by the Colorado Department of Public Health and Environment Air Pollution

Division and who had certification from Acclaim Environmental Services, Inc. indicating

successful completion of course work as Air Monitoring Specialists, as well as certification from

Environmental Training & Consulting of completion of the NIOSH 582 Equivalent Course

Sampling & Evaluating Airborne Asbestos Dust – to perform asbestos area air-monitoring, final

visual inspection, and final air clearance sampling at the sites of these projects.  (Reply, Ex.

A-22, ¶¶ 8-14.)  Any areas where renovation work was to be performed that were known or

suspected of containing asbestos were secured until Walsh Environmental Scientists and

Engineers, LLC conducted an inspection of these areas and developed a plan for the renovation

work to ensure environmental safety and compliance with all applicable federal and state health

and safety regulations and standards.  (*Id.*, ¶¶ 15–19.)  Once the plans were developed, they were

implemented by other private companies such as contractors and specialists in asbestos

abatement under the supervision of Walsh Environmental Scientists and Engineers, LLC.  (*Id.*,

¶¶ 15–20.)  Any materials contaminated with asbestos were sealed and moved to secure areas,

with the awareness of Walsh Environmental Scientists and Engineers, LLC.  (*Id.*, 27–29.)

The staff of Walsh Environmental Scientists and Engineers, LLC performed tests such as

air measurements and visual inspections in all of the relevant areas to assess the potential

contamination of the air by asbestos particles.  (*Id.*, ¶ 31.)  Walsh Environmental Scientists and

Engineers, LLC determined that all of the projects were performed and completed within the

required health and safety requirements, and that the containments employed during these

projects passed inspection criteria and clearance levels set by the Environmental Protection

Agency (EPA) and the CDPHE.  (*Id.*, ¶ 32.)

In addition, Plaintiff was seen regularly by medical staff at BVCF for allergy complaints and other matters.  As set forth the Affidavit of Dr. Frantz, Plaintiff's medical records contain no evidence indicating that Plaintiff suffered any ailments or injuries as a result of the alleged hazardous conditions at BVCF.  Dr. Frantz stated Plaintiff's medical records contain nothing to indicate that he has suffered from lead poisoning, and despite many kites and visits with clinical services, Plaintiff never reported any symptoms that would be associated with exposure to toxic levels of lead.  (Mot., Ex. A-11 [Aff. of Dr. Paula Frantz], ¶ 62.)  There is no indication that Plaintiff was exposed to friable asbestos, MRSA, toxic mold and mildew, toxic fumes, MRSA or other bacterial infections, or other toxic chemicals or substances.  (*Id.*, ¶¶ 52, 61–65.)  There is no evidence that even if he was exposed to any of these substances that he suffered any injury as a result.  (*Id.*)  As stated by Dr. Frantz, Plaintiff's medical records show that he has a longstanding problem with rhinitis due to seasonal allergies, complicated by damage to his nasal cavities as a result of "a long history of snorting cocaine," for which he has been appropriately treated.  (*Id.*, ¶¶ 41, 48–51.)  Case Manager Carol McCormac, who worked in the same area where Plaintiff was incarcerated also noted that she never observed the unsafe living conditions of which Plaintiff complained, and would have been exposed to the same conditions herself, had they existed, as that was where she worked.  (Ex. A-18, ¶¶ 29–31.)

Despite the overwhelming evidence presented by Defendants, the court finds there are disputed facts whether Plaintiff was exposed to conditions at BVCF that <u>may</u> constitute a substantial risk of serious harm.  *Helling,* 509 U.S. at 33–35; *Shannon*, 257 F.3d at 1168.  For instance, Plaintiff alleges he has been exposed to excessive heat during the summer, cold

temperatures in the winter, that his cell was contaminated with "insects, rats, mice and other vermin," and that the showers had mold and mildew that caused him allergic reactions. (Doc. No. 133 at 13–14.) Nevertheless, as discussed below, Plaintiff has failed to meet the subjective element of his claim.

### 2. *Subjective Element*

Despite the factual dispute regarding the actual conditions at BVCF, Defendants argue that Plaintiff has failed to satisfy the subjective element for an Eighth Amendment claim related to unsafe living conditions. As demonstrated the Affidavits of all of the defendants against whom Claim One is asserted, none of them had any knowledge that Plaintiff or any other person present at BVCF from October 2008 through January 2011 were exposed to unsanitary living conditions or environmental toxins. (Exh. A-1, ¶ 7; Ex. A-2, ¶ 8; Ex. A-3, ¶ 7; Ex. A-4, ¶ 7; Exh. A-5, ¶ 7; Ex. A-6, ¶ 7; Ex. A-7, ¶ 16; Ex. A-8, ¶ 9; Ex. A-9, ¶ 9; Ex. A-10, ¶ 8.) Each of the defendants' beliefs are based upon the results of the inspections by the CDPHE and the ACA audit, none of which substantiate Plaintiff's allegations in Claim One. (Ex. A-1, ¶ 14; Ex. A-2, ¶ 15; Ex. A-3, ¶ 14; Ex. A-4, ¶ 14; Ex. A-5, ¶ 14; Ex. A-6, ¶ 14; Ex. A-8, ¶ 16; Ex. A-9, ¶ 16; Ex. A-10, ¶ 15.) Defendants Green, Brunell, Dunbar, Bartruff, Connors, Ortega, Smethers, Lengerich, and Lague attest they would not knowingly expose inmates or staff to unsafe or unsanitary conditions and did not do so to their knowledge. (Ex. A-1, ¶ 14; Ex. A-2, 15; Ex. A-3, ¶ 14; Ex. A-4, ¶ 14; Ex. A-5, ¶ 14; Ex. A-6, ¶ 14; Ex. A-8, ¶ 16; Ex. A-9, ¶ 16; Ex. A-10, ¶ 15.)

Defendants analogize the case law holding that, when assessing Eighth Amendment claims alleging inadequate medical care, lay prison officials are entitled to rely on the diagnoses, responses and orders provided by the medical professionals. *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *see Ellison v. Scheipe*, 570 F. Supp. 1361, 1363 (E.D. Pa. 1983) ("[P]rison officials cannot be required to second guess the medical judgment of the physician."); *see also Shanton v. Detrick*, 826 F. Supp. 979, 982 (N.D. W.Va. 1993), *aff'd*, 17 F.3d 1434 (4th Cir. 1994). Defendants assert that they, as lay people in the area of environmental hazards and asbestos abatement, were entitled to rely upon the expertise of the certified environmental hygienist company that was hired to ensure the environmental safety of the renovation projects. The court agrees. The information provided from these specialists was that the renovations were performed safely, and Defendants were entitled to rely on their expertise. As such, there is no evidence showing that these individuals knowingly or callously and recklessly disregarded a serious risk of substantial harm to Plaintiff.

Therefore, as Plaintiff has failed to satisfy the subjective element of his Eighth Amendment claim for unsafe living conditions, and the defendants are entitled to summary judgment on this claim.

## C.  *Plaintiff's Eighth Amendment Claim for Deliberate Indifference to Medical Needs*

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976). "Deliberate indifference" involves both an objective and a subjective component. The objective component

is met if the deprivation is "sufficiently serious." *Farmer*, 511 U.S. at 834. A "delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Oxendine v. R.G. Kaplan, M.D.*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotations and citation omitted). "That 'substantial harm' can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm." *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) (internal quotations and citations omitted). "Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems." *Hunt*, 199 F.3d at 1224. "Officials may also be held liable when the delay results in a lifelong handicap or a permanent loss." *Id.* "A difference of opinion as to the kind and timing of medical treatment does not rise to the level of an Eighth Amendment violation." *Tyler v. Sullivan*, 83 F.3d 433, 1996 WL 195295, at *2 (10th Cir. Apr. 22, 1996).

The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "Deliberate indifference is 'something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Dual v. Lane*, 959 F.2d 673, 577 (7th Cir. 1992).

Again, Defendants argue that Plaintiff's Eighth Amendment claim regarding deliberate indifference to Plaintiffs' medical needs fails because Plaintiff cannot meet either the objective or the subjective elements of such a claim.

13

### 1.    *Objective Element*

The undisputed medical records do not demonstrate that Plaintiff suffered any serious injury, lifelong handicap, or permanent loss as a result of periodic delays in his various medications.  As set forth by Dr. Frantz in her Affidavit, she found no evidence either that clinical services staff routinely delayed or denied treatment to Plaintiff, nor did Dr. Frantz find that Plaintiff's medical records established that he showed any symptoms of injury from delays of medications.  (Mot., Ex. A-11, ¶¶ 59-60.)  Dr. Frantz provided a detailed summary of Plaintiff's medical records that shows Plaintiff regularly received care, and regularly had various prescription medications renewed.  (*Id.*, ¶¶ 21-60.)  Dr. Frantz noted that there were some delays in providing Plaintiff with medications, apparently primarily due to facility lockdowns.  (*Id.*, ¶ 58.)  However, despite Plaintiff's conclusory allegations to the contrary, there is no indication in Plaintiff's medical records that he showed any symptoms of any problems resulting from delays to his medications in his many, many visits to clinical services.  (*Id.*, ¶¶ 21-60.)  Therefore, the facts do not support the objective element of Plaintiff's Eighth Amendment claim as to deliberate indifference to his medical needs.

In his response, Plaintiff provides the Court with a number of medical records and pharmacy records, apparently in support of his allegation that the defendants failed to timely provide the medications.[2]  Plaintiff has failed, however, to point to a single record in support of

---

[2]Throughout this portion of Plaintiff's response, he refers only generally to his exhibits, without specific cites.  Again, this is insufficient and alone is sufficient reason to grant summary judgment in favor of Defendants.  *See Mitchell*, 218 F.3d at 1199.

his allegation that the periodic delays in receiving his medications resulted in substantial harm. *Oxendine*, 241 F.3d at 1276.  Plaintiff also provides the court with a number of Pharmacy Sheets regarding medications that he has been prescribed.  These documents do not establish that Plaintiff was exposed to a serious risk of harm by periodic delays in receiving his medications, as these documents contain primarily information about the possible side effects of taking the medications, possible allergic reactions and drug interactions, and effects on pregnancy.  Even to the extent that the documents speak to any possible harm caused by abrupt disruptions in medications, they do not establish that Plaintiff <u>actually</u> sustained such harm, nor do Plaintiff's medical records substantiate a permanent injury.[3]

Therefore, Plaintiff has failed to establish the first prong of the analysis under the *Estelle* case.

### 2.    *Subjective Element*

Defendants argue that Plaintiff's Claim Two fails against Defendants Smith and Bland because Plaintiff's allegations fail to show that these Defendants acted with the requisite subjective intent necessary to state an Eighth Amendment claim and because Plaintiff has failed to show that Defendants Bland and Smith personally participated in the alleged delays and deprivations of medications of which he complains.  As discussed above, in order to state an

---

[3]In his Response, Plaintiff also seems to assert that Defendant Bland should be held liable for her failure to follow the CDOC Administrative Regulations.  (*See* Resp. at 54.)  However, a defendant's alleged failure to properly follow various prison regulations fails to allege the violation of a Constitutional right, as prison regulations are "primarily designed to guide correctional officials in the administration of a prison.  [They are] not designed to confer rights on inmates."  *Sandin v. Conner*, 515 U.S. 472, at 481–82 (1995).

Eighth Amendment claim against prison workers, an inmate must show that the defendants had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Additionally, personal participation is an essential element of a § 1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir.1993). In other words, "for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).

### a.    *Defendant Bland*

Defendant Bland was a Shift Commander at BVCF at the time Plaintiff was incarcerated there. (Mot., Ex. A-12, ¶ 2.) Defendant Bland's job duties were supervisory, and included overseeing daily operations at the facility, responding to emergency situations, and mentoring and training subordinate employees, among other duties. (*Id.*, ¶ 3.) Defendant Bland's job responsibilities did not encompass providing medical care to inmates. (*Id.*, ¶ 4.) Defendant Bland was not aware of the alleged lapses in medication Plaintiff complains of, nor did she have information regarding his medical conditions. (*Id.*, ¶¶ 6–7.) Defendant has never seen Plaintiff's medical records, which are considered privileged and confidential. (*Id.*, ¶¶ 7–8.) Defendant Bland did not have the authority to address Plaintiff's medical issues. (*Id.*, ¶¶ 9–10.) Defendant Bland could only transport an inmate to the medical department for medical care in case of an

emergency, and barring an emergency, she could only refer an inmate with complaints about medical issues to the medical department.  (*Id.*, ¶¶ 10–11.)

The undisputed evidence shows that Defendant Bland did not actually know of or disregard a serious risk of harm to Plaintiff.  Likewise, the undisputed evidence shows that Bland did not personally participate in the alleged delays in his obtaining medications, because Defendant Bland had no authority to provide medical care to inmates or to personally address their complaints about medical care.  Therefore, Defendant Bland is entitled to summary judgment on Plaintiff's Eighth Amendment claim for deliberate indifference to his medical needs.

### b.    Defendant Smith

Defendant Smith was a mental health supervisor at BVCF.  (Mot., Ex. A-13, ¶ 3.)  Her job responsibilities included supervising the BVCF mental health clinic, scheduling tele-video psychiatric conferences between inmates and psychiatrists, managing/maintaining inmate mental health caseload, and responding to grievances sent by inmates concerning mental health issues. (*Id.*)  Defendant Smith also had an inmate mental health caseload, and access to Plaintiff's medical records. (*Id.*, ¶¶ 7, 9.)  However, Plaintiff was never assigned to Defendant Smith's inmate caseload.  (*Id.*, ¶ 8.)

Defendant Smith is not a licensed psychiatrist and cannot prescribe medications.  (*Id.*, 5.)  She did not have any control or involvement in facility lockdowns or the releasing of inmates for med-line to obtain prescription medications.  (*Id.*, ¶ 10.)  Defendant Smith was only aware of one instance in which Plaintiff experienced a delay in the receipt of medical treatment due to an

error.  (*Id.*, ¶ 12.)  Plaintiff notified the mental health department about the delay and Dr.

Shepard was contacted to correct the error.  (*Id.*)  As the psychiatrist treating Plaintiff, Dr.

Shepard had the authority to correct the prescription related error.  (*Id.*)  Defendant Smith did not

have such authority, and could only refer an inmate such as Plaintiff to his treating psychiatrist.

(*Id.*)  Defendant Smith did not have the authority to prescribe medication to inmates or adjust an

inmate's prescribed medication.  (*Id.*)

        In the event that an inmate would experience an issue with his prescription medication,

Defendant Smith was limited in her ability to directly address the inmate's medical concerns,

and her authority extended merely to facilitating communications between the inmate and the

treating psychiatrist in order for the psychiatrist to address the inmate's medical concerns.  (*Id.*)

She was not responsible for the delays, she was not a psychiatrist and had no authority over

Plaintiff's medications, she did not treat Plaintiff, and she was aware of only one instance in

which there was a delay in the receipt of medication, in which Plaintiff was referred to Dr.

Shepard to have the issue resolved.  (*Id.*)  Awareness of a single instance of a delay is not

enough to demonstrate that Defendant Smith was aware of a serious risk of harm to Plaintiff,

particularly when Plaintiff was referred to his treating psychiatrist to have the issue resolved.

There is no evidence that Defendant Smith had any awareness of any other delays, nor of any

issues concerning Plaintiff's medical care for physical ailments.  Thus, the undisputed evidence

does not show that Defendant Smith was deliberately indifferent to a serious risk of harm to

Plaintiff posed by the alleged delays in his medications.  The undisputed evidence also fails to show that Defendant Smith personally participated in the delays of which Plaintiff complains.[4]

Therefore, for the foregoing reasons, the court recommends that Defendants Bland and Smith be granted summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim.

### D.      Plaintiff's Claim for Violation of His Religious Rights

Defendants assert Plaintiff did not properly exhaust his administrative remedies regarding his religious rights claim, and thus his claim is barred.  Defendants assert, in the alternative, that Plaintiff cannot state a viable claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") or the First Amendment, and that the evidence fails to show that Defendants personally participated in any violations regarding a kosher diet.

### 1.      Exhaustion

Pursuant to the Prison Litigation Reform Act ("PLRA"), no action may be brought by a prisoner with respect to prison conditions until all available administrative remedies are

---

[4]For the first time in his response, Plaintiff has included arguments and exhibits concerning his assertion that the handling of his medications and mental health treatment has somehow deprived him of his rights under the Americans with Disabilities Act (ADA), and his contention that he should have been provided with accommodations through a class action suit known as the *Montez* case.  Even to the extent that Plaintiff asserts such a claim within Claim Two, however, he fails to state an ADA claim upon which relief can be granted.  The ADA does not cover disputes regarding the propriety of medical care.  *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (allegedly negligent medical decisions do not ordinarily fall within the ambit of the ADA); *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) ("[T]he failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

exhausted. 42 U.S.C. § 1997(e)(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") In addition, under the PLRA, if an inmate fails to follow the time deadlines set forth in a prison's administrative grievance procedure, he is deemed to have procedurally defaulted on the exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."). The result of grievances being properly denied for untimeliness should be dismissal of the claims with prejudice, as the inmate's failure to exhaust is not "a temporary, curable, procedural flaw." *Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006).

Here, the undisputed evidence shows that Plaintiff failed to timely file his Step 2 and Step 3 grievance forms regarding his claims concerning the adequacy of the kosher food provided to him at BVCF within five days after receipt of the response to his earlier grievances. (Mot., Ex. A-19, ¶¶ 11–14.) Therefore, the grievance officer determined that Plaintiff had failed to comply with the CDOC's grievance procedures, and concluded that Plaintiff had not exhausted his administrative remedies with regard to the issues raised in the grievances given grievance number BV08/09-548. (*Id*) As such, Plaintiff failed to exhaust his administrative remedies as required by the PLRA, and Claim Three is barred. *Woodford*, U.S. at 90–91; *Kikumura*, 461 F.3d at 1290.

In his response, Plaintiff concedes he did not fully exhaust his administrative remedies. (Resp. at 19, 69.) Plaintiff asserts that his untimely filing of the Step 2 grievance should be

excused because he was not able to obtain a Step 2 grievance form within five days of receipt to his Step 1 grievance regarding the kosher diet.  He asserts that he instead filed his Step 2 grievance within five days after he finally received a Step 2 grievance form, and asserts that therefore his untimely filing of the Step 2 grievance should be excused.  (*Id.* at 20–23.)

With regard to the Step 3 grievance, which was also untimely, Plaintiff asserts that his case manager was on vacation when he received the response to his Step 2 grievance, and that therefore he was not able to obtain a Step 3 grievance form until she returned.  Plaintiff asserts that he filed his Step 3 grievance within five days after receiving the Step 3 grievance form from his case manager upon her return from vacation, and that therefore the lateness of the filing of his Step 3 grievance should also be excused.  (*Id.*)

However, Plaintiff provides no evidence to support his assertion that the late filing of his Step 2 grievance should be excused due to special circumstances.  In addition, the Step 3 grievance officer, Anthony DeCesaro, provided a second Affidavit in which he explained he deemed Plaintiff's Step 2 grievance to be untimely, in violation of the CDOC's procedural rules regarding grievances, because 1) Plaintiff should still have had sufficient time to obtain a Step 2 grievance form and file it even allowing for the Fourth of July holiday and a staff furlough day, and 2) regardless, Plaintiff failed to provide any information concerning these alleged special circumstances when he filed the Step 2 and Step 3 grievances.  (Reply, Ex. A-20, ¶¶ 15–22.)

Mr. DeCesaro's determination was reasonable, as filling out a grievance form is indeed a very simple matter, and merely requires the inmate filing the grievance to identify the problem of which they complain within in a two-inch space.  There is no need to consult legal resources or

to type the grievance so long as it is legible, and the body of the Step 2 grievance complaint may

be the same as that of the Step 1.  (Mot., Ex. A-19 at 8, AR 850-04 (IV)(C)(1) and (D)).  In

addition, if Plaintiff wanted several days to compose the Step 2 grievance after receiving the

response to the Step 1 grievance, Plaintiff could easily have written this short, simple portion of

the Step 2 grievance form on a regular piece of paper and copied it onto the Step 2 grievance

form once he received the form.

Plaintiff does not deny that he received the Step 2 grievance form before the expiration of

the requisite 5-day time period, but he contends that because he did not obtain the form at the

beginning of the 5-day period, he unilaterally decided he was entitled to an additional five days

to file the Step 2 grievance.  Mr. DeCesaro did not agree that this was permitted by the CDOC's

regulations regarding grievances, and deemed the Step 2 grievance untimely.

With regard to Plaintiff's Step 3 grievance, Mr. DeCesaro explained that when an

inmate's assigned case manager is on vacation, an inmate may obtain grievance forms from

multiple other case managers so that they may timely file grievances.   (Reply, Ex. A-20, ¶ 23.)

Mr. DeCesaro did not deem Plaintiff's assertion that he should have been excused from timely

filing a Step 3 grievance as required by the CDOC's grievance regulations to be valid because

Step 3 grievance forms can be obtained from several other case managers if an inmate's assigned

case manager is not available.  (*Id.*, ¶ 24.)  Additionally, Step 3 grievance forms can be requested

through kites or by oral requests made directly to a case manager.  (*Id.*)  Therefore, Mr.

DeCesaro determined that Plaintiff did not avail himself of the multiple avenues available to him

to obtain a Step 3 grievance form within the requisite time period, and that therefore he failed to comply with the CDOC's procedures regarding grievance filing.  (*Id.*, ¶¶ 25–26.)

As a result, the evidence demonstrates that Plaintiff did not comply with the CDOC's procedural requirements regarding the filing of both his Step 2 and Step 3 grievance, and that his untimeliness was not excused under the CDOC's grievance policies because he was not unable to timely file grievances, particularly the Step 3 grievance.  Thus, because Plaintiff failed to comply with the time deadlines set forth in the CDOC's administrative grievance procedure, he is deemed to have procedurally defaulted on the exhaustion requirement.  *Woodford*, U.S. at 90–91; *Kikumura*, 461, F.3d at 1290.  Plaintiff's Claim Three is therefore barred, and Defendants are entitled to summary judgment on the claim.  Thus the court need not address the merits of Plaintiff's claims for a violation of his religious rights.

### E. Plaintiff's Claim for Retaliation

Defendants argue that Plaintiff failed to exhaust his allegations of retaliation against any defendant except Defendant Lague and that the evidence does not substantiate Plaintiff's retaliation claims.

#### 1. Exhaustion

As set forth above, the PLRA requires prison inmates to exhaust their administrative remedies before filing civil rights claims such as Plaintiff's retaliation claim.  *Woodford*, U.S. at 90–91; *Kikumura*, 461, F.3d at 1290.  The Step 3 grievance officer stated that Plaintiff filed a Step 3 grievance, number BV09/10-327, concerning Defendant Lague, as well as grievances regarding the alleged confiscation of items of his property.  (Mot., Ex. A-19, ¶¶ 15-17.)

23

However, the grievance officer he did not find any record of Step 3 grievances concerning alleged acts of retaliation or harassment by staff members by the last name of Green, Dunbar, Bartruff, Coleman, Dansdill, Dent, Ortega, Bland, McCormac, or Lengerich in 2009, 2010, or 2011.  (*Id.*, ¶ 18.)  Moreover, regarding Defendant Lague, Plaintiff only filed a Step 3 grievance against him concerning allegations that Defendant Lague retaliated against him and harassed him by failing to open his cell door so he could report to work and by confiscating items from his cell. (Reply, Ex. A-20. ¶¶ 28–29.)  Plaintiff did not file grievances regarding any of the other alleged incidents of retaliation or other alleged constitutional violations by Defendant Lague of which he now complains.  (*Id.*, ¶ 29; Ex. A-19, attached Step 1, Step 2, and Step 3 grievances marked Grievance No. BV09/10-327.)

Plaintiff has not come forth with any evidence to refute Mr. DeCesaro's statements regarding Plaintiff's failure to exhaust the allegations and claims asserted in Claim Four other than those limited allegations contained in Grievance No. BV09/10-327 regarding Defendant Lague's alleged failure to open his cell door and the alleged wrongful confiscation of his property.  As a result, Plaintiff's claims for retaliation concerning any matters other than those issues raised in the grievance concerning Defendant Lague given grievance number BV09/10-327, including Plaintiff's retaliation claims against any defendant other than Defendant Lague, are barred due to Plaintiff's failure to exhaust.

### 2.   *Retaliation Claim*

In order to establish a retaliation claim, an inmate must show (1) that he was engaged in constitutionally protected conduct under the First Amendment; (2) that an adverse action was

taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that "but for the retaliatory motive, the incidents to which he refers would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990).  To establish a claim for retaliation, a plaintiff must show that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Maschner*, 899 F.2d at 949-50.  Prison officials do not have the burden of proof.  *See Goff v. Burton*, 7 F.3d 734, 737–39 (8th Cir. 1993).

Here, to the extent that Plaintiff asserts that Defendant Lague retaliated against him for filing prison grievances, Plaintiff has not provided any evidence showing that Defendant Lague was even aware that Plaintiff had filed grievances in the first place.  Next, there is no evidence to substantiate Plaintiff's allegations that Defendant Lague retaliated against him.  Defendant Lague explained his interactions with Plaintiff and his role in one accidental incident in which Plaintiff's cell door was not opened so that Plaintiff could report for work lines.  (Mot., Ex. A-7, ¶¶ 5–14.)  Even if Defendant Lague had wrongfully failed to open Plaintiff's cell door (which Defendant Lague admitted, but explained was unintentional), and confiscated items of his property, such conduct only forms the basis for a retaliation claim <u>if</u> Defendant Lague's <u>sole motivation</u> was to chill Plaintiff from exercising his constitutional rights.  899 F.2d at 949-50. Unprofessional conduct and personal animus by a prison staff member against an inmate do not state a retaliation claim unless the basis for the alleged misconduct is a desire to retaliate against an inmate for exercising a constitutional right. *See id.*

25

Defendant Lague stated that he has not retaliated against Plaintiff for filing grievances, and there is no evidence that any actions taken by Defendant Lague toward Plaintiff were motivated by a desire to retaliate against him.  In the absence of any evidence that Defendant Lague was actually motivated to retaliate against Plaintiff for filing grievances, and the lack of any evidence that Defendant Lague took adverse action against Plaintiff to retaliate against him, and the lack of any evidence that "but for" Defendant Lague's alleged desire to retaliate these actions would not have taken place, Plaintiff's retaliation claim against Defendant Lague fails. *Maschner*, 899 F.2d at 949–50.

Therefore, because the undisputed evidence does not show that Defendant Lague's alleged actions would not have occurred "but for" a desire to retaliate against Plaintiff for exercising his constitutional rights, Defendant Lague is entitled to summary judgment on Plaintiff's retaliation claim.

As the court has determined Defendants are entitled to summary judgment on all of Plaintiff's claims, the court need not analyze the remaining arguments in Defendants' Motion.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that the "Motion for Summary Judgment" filed by Defendants Green, Dunbar, Brunnell, Bartruff, Dansdill, Legnerich, Connors, Smethers, Bland, Dent, Coleman, Ortega, Smith, McCormack, Crockett, and Lague (Doc. No. 177) be **GRANTED**.[5]  The court further

---

[5]The case will proceed against Defendant Shepard.

26

**RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation and order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

      Dated this 30th day of August, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge