IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 10-cv-0515-RBJ-KMT

STEVEN HADEN,

    Plaintiff,

v.

STEVE GREEN, Warden, Buena Vista Correctional Facility,
WILLIAM BRUNNELL,
GEORGE DUNBAR,
TERRI BARTRUFF,
R. DANSDILL,
J. LENGERICH,
D. CONNORS,
G. SMETHERS,
L. BLAND,
V. DENT,
T. COLEMAN,
A. ORTEGA,
DR. SHEPARD,
G. SMITH,
C. MCCORMACK,
CROCKETT,  and
C. LAGUE,

    Defendants.

---

ORDER

---

Mr. Haden is a pro se inmate who was housed at the Buena Vista Correctional Facility (BVCF) from early 2009 through December 2010. He was transferred to the Arkansas Valley facility, where he remains to the present time. Mr. Haden filed this suit in March 2010 alleging four claims pursuant to 42 U.S.C. § 1983. [Docket #133]. His Final Amended Complaint [#133] named 21 individuals who worked for the Colorado Department of Corrections and were either located at or provided services to the BVCF. He claimed that the defendants (1) breached their

1

duty to provide sanitary and safe living conditions; (2) were deliberately indifferent to his medical and mental health needs; (3) were deliberately interfering with his ability freely to practice his religion; and (4) were retaliating against him in several ways because he had submitted grievances and filed this lawsuit.

A motion for summary judgment was filed on behalf of all defendants except Dr. David M. Shepard [#177]. Dr. Shepard was not included in the motion for summary judgment because at that time he had not been served with the complaint. Magistrate Judge Tafoya recommended that the other defendants' motion for summary judgment be granted. [#276]. Mr. Haden objected [#295], but after de novo review, this Court adopted Judge Tafoya's recommendation and granted those defendants' motion for summary judgment. [#299].

Meanwhile Dr. Shepard had been properly served on February 23, 2012 [#239]. He then filed a motion for summary judgment [#301]. Mr. Haden has filed a timely response [#306]. The Court finds that it does not need a reply or oral argument to resolve the motion. For the reasons set forth herein, the motion is granted.

**Facts**

Mr. Haden suffers from mental illness. He alleges that his illnesses include bipolar disorder, general anxiety disorder, and obsessive compulsive disorder. Final Amended Complaint [#133] at 16.

Dr. Shepard is a psychiatrist. The BVCF does not have an onsite psychiatrist, and since January 2008 Dr. Shepard has provided psychiatric services to inmates in the Colorado Department of Corrections on a contract basis. Shepard Affidavit [#301-1] ¶3. He provided mental health services to Mr. Haden while he was in the BVCF including tele-psychiatry visits, review of mental health records, writing prescriptions, and conducting reviews and renewals of

2

medications. *Id.* ¶10, 26. He first saw Mr. Haden on October 31, 2008 and provided services to him on between 15 and 20 occasions from that date through December 2010. *Id.* ¶26, 28.

Dr. Shepard's diagnosis was that Mr. Haden' psychiatric problems are obsessive-compulsive disorder or personality and anxiety disorders. *Id.* ¶16. However, any difference between Mr. Haden and Dr. Shepard concerning the nature of his mental illness is immaterial to the present case. Mr. Haden does not question Dr. Shepard's medical judgment. Final Amended Complaint at 16.

The primary psychiatric medications that Dr. Shepard prescribed for Mr. Haden were Effexor, an anti-anxiety medication and anti-depressant, and Lamictal, a medication often prescribed with another mood stabilizer such as Effexor to amplify its effect. He also prescribed Trazodone as a sleep aide. Shepard Affidavit ¶¶22, 23 and 25. Mr. Haden complains that on various dates while he was at the BVCF he either did not receive some or all of those medications, or that he received them in incorrect dosages. He cites several causes for these problems including "prescription errors" that he attributes to Dr. Shepard and to mental health clinician; facility lock-downs; data entry errors by medical staff; and prison officials' failure to release him for medication distribution. Final Amended Complaint at 16.

Mr. Haden alleges that his problems began on October 9, 2008, the date he arrived at the BVCF, when he did not receive medicines previously prescribed for him (by a physician other than Dr. Shepard). This happened again on the following day, October 10, 2008. *Id.* Obviously he cannot attribute those problems to Dr. Shepard, who had not yet seen him or provided other services to him. Likewise, although he complains that he did not receive his Lamictal between October 16 and 30, 2008, *id.* at 18, that too cannot be attributed to Dr. Shepard.

3

However, Mr. Haden lists dates in 2008, after Dr. Shepard had become his treating psychiatrist, when he alleges that he did not receive all the medications prescribed: November 6, 2008 (Effexor); and November 10-11, 2008 (Effexor, Lamictal, Trazodone). *Id.* He alleges that the problems resumed on February 20, 2009 following a telemedicine appointment with Dr. Shepard. *Id.* at 18. That night he was told at medline that one medication had been stopped and two others had been reduced. Mr. Haden immediately alerted his shift commander to this "prescription error." *Id.* However, the shift commander told him to submit a kite, which could not be considered that night, a Friday, and he had to wait until Monday. Mr. Haden alleges that this problem was not finally resolved until March 26, 2009. *Id.*

Mr. Haden alleges that additional lapses in providing his psychiatric medications occurred as follows: May 8-11, 2009 (Effexor, Lamictal, Trazodone); June 17, 2009 (same); and November 5, 2009 (same). He does not allege problems with these medications in 2010. Mr. Haden states that he also received medical treatment for various non-psychiatric conditions, and that he received Metoprolol and Levothyroxine, among other medications, for those conditions. He alleges that there were problems with Metoprolol and Levothyroxine on several occasions in 2010 and in February 2011. *Id.* at 18. He does not appear to attribute those problems to Dr. Shepard, nor is there evidence in the record that Dr. Shepard prescribed them.

Mr. Haden complains that he has suffered from stress and anxiety because of the lapses in providing his psychiatric medications, which in turn have led to suicidal ideation, withdrawal syndrome, increased blood pressure, headaches, body aches, weight gain, memory loss, fatigue, insomnia, depression, anxiety, panic attacks and manic behavior. *Id.* at 17.

Dr. Shepard states that when he first saw Mr. Haden on October 31, 2008 Mr. Haden reported that he was taking half the dose he had been prescribed for Lamictal and was also taking

Nortriptyline. Shepard Aff. ¶28. He saw him again on November 6, 2008. Dr. Shepard was not located at the BVCF. He states that he had no involvement in the filling of prescriptions at the pharmacy, nor does he have control or authority over the procedure for handing the filling of prescriptions. *Id.* ¶32. He adds that he had involvement in the actual administration of medication at the facility and would not have known the status of the filling of the prescription unless someone notified him. *Id.*

For example, he did not know that Mr. Haden's Lamictal and Effexor had been stopped after he saw him on November 6, 2008. He learned on November 16, 2008 that the pharmacy had not received a non-Formulary request or these medicines. *Id.* at 30, 33-36. Therefore, he renewed the prescription for Mr. Haden's medications on that day. *Id.* at 35-36. He began with a lower dose of Effexor for five days, increasing steadily to 150 mg, and he stopped the prescription for Nortriptyline due to Mr. Haden's symptoms of irritability. *Id.* ¶37. Accordingly, he acknowledges that there was a ten-day period between November 6 and November 16, 2008 when Mr. Haden was without Effexor and Lamictal due to "prescription error." *Id.* at 38.

The medical records appear to indicate that Mr. Haden received his medications from an on-call psychiatrist, but in any event, Dr. Shepard acknowledges that, according to the medical records, Mr. Haden experienced an increase in anxiety but not physical discomfort because of the temporary cessation of his medications. However, Mr. Haden responded well when his Effexor was resumed, and his discomfort was rapidly alleviated. *Id.* at 38-39. There is no indication that Mr. Haden expressed suicidal thoughts during that time period, nor would that be expected, particularly because he had been on low dosages of the medications. *Id.* at 40. Nevertheless, Dr. Shepard expresses regret that Mr. Haden experienced increased anxiety and discomfort. *Id.* at 42.

Dr. Shepard states that when he saw Mr. Haden on February 20, 2009, Mr. Haden expressed more frustration with the conditions in prison but otherwise seemed appropriate and well controlled. He modified the Lamictal and Effexor prescriptions somewhat on that day and again on February 23 and June 7, 2009, the latter at the request of a mental health clinician. *Id.* at ¶44-46. Dr. Shepard acknowledges that he now understands that Mr. Haden is complaining that the administration of his medications was delayed or denied on a number of occasions due to lockdowns or other actions by individuals at the BVCF. He states, however, that he had no knowledge of those problems or complaints while he was treating Mr. Haden. *Id.* at 47-48. He adds, still apparently based on his review of the medical records, that Mr. Haden did not appear to manifest symptoms of any significant psychological injury or damage as a result of such delays or denials. *Id.* at 49.

Dr. Paula Franz, the Chief Medical Officer for the Colorado Department of Corrections, has worked as a physician within the Department since 2004. She supervises and evaluates the treatment of inmates by physicians, nurses, physician's assistants, nurse practitioners and other medical providers. Franz Affidavit [#301-2] ¶¶3-6. She has reviewed Mr. Haden's medical records from his admission to the Huerfano Correctional Facility on December 19, 2007 forward.

Dr. Franz' affidavit contains pages of recitation of Mr. Haden's history allergies, nasal problems, and other conditions and medications related to those conditions that appear to have no relevance to his complaints about his psychiatric medications or to Dr. Shepard. *See id.* at ¶¶15-54. With respect to his mental health medications, Dr. Franz states that, contrary to Mr. Haden, the electronic records show that he did receive his medications on May 8, 9, and June 17, 2009. He received half of what he should have received (lacking either morning or evening medications) on May 22 and 24 and November 5, 2009. *Id.* at ¶¶55-57. She says that the cause

6

of these half-day misses appears to have been facility lockdowns, although she cannot be definite because she does not have access to the details of the lockdowns to match them with the times when medications were to be distributed. *Id.* at 58.

Dr. Franz states that the records do not indicate a negative outcome or increased mental health symptoms due to these half-day interruptions. *Id.* at 59. Notes of Mr. Haden's two appointments with his psychiatrist following the interruptions indicate routine care. *Id.* Dr. Franz states that the records do not indicate routine delays or denials of treatment. The "overwhelming majority" of Mr. Haden's kites were requests to renew prescriptions, and the records show that the providers were diligent in refilling his medications. *Id.* at ¶60.

In response to the motion for summary judgment Mr. Haden submits two affidavits, both of himself. [##306-1 and 306-2]. He states that he has experienced "risky or dangerous behavior or attempted suicide" in the past when his psychiatric illnesses went untreated. [#306-1] at ¶6. He lists each date on which Dr. Shepard provided treatment to him, from October 31, 2008 through November 16, 2010 (eight times according to him). *Id.* ¶13. He expresses criticism of Glynette Smith, a licensed mental health care provider, and Lisa Bland, a shift commander, in relation to missed medications. *Id.* at 14-16, 19. As a result, he suffered unnecessarily, physically and mentally. *Id.* at 17. He attempts to assert new charges of discrimination in violation of the Americans with Disabilities Act against the CDOC for administering his evening medications directly after dinner, which made him sleepy and caused him to miss out on participation in evening activities. *Id.* at ¶¶21-24. He reiterates that Dr. Shepard and all other medical providers have a duty to provide him with mental health services. [#306-2] at ¶7. He provides a history of his treatment for mental illness going back to 1998. *Id.* at ¶¶8, 10-18. *See also* exhibits 3, 5 and 6 to his response [##306-3, -5 and -6]. He notes that Dr. Shepard never

met him in person and indicates that his tele-medicine sessions with him generally lasted no longer than 20 minutes and included a list of perfunctory questions. *Id.* ¶19. He notes that Dr. Shepard has a duty to record prescription orders accurately. *Id.* at ¶22.

The only thing Mr. Haden's affidavits say that could be interpreted as being contrary to Dr. Shepard's affidavit is an assertion that Dr. Shepard failed to provide proper prescriptions for doses that he needed. *Id.* at ¶25. This is an expression of disagreement with Dr. Shepard's medical judgment, which Mr. Haden disavowed in his Final Amended Complaint. In any event, Mr. Haden, though obviously intelligent and attuned to his medical and mental health history, has no expertise with which to second guess the medical judgments of Dr. Shepard.

**Conclusions**

A prison official violates a prisoner's Eighth Amendment right to be free from cruel and unusual punishment if he is deliberately indifferent to a prisoner's serious medical needs. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). Deliberate indifference to a serious medical need has both objective and subjective elements. The objective element requires that the deprivation be "sufficiently serious." *Id.* "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). A "delay in medical care only constitutes an Eight Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Oxedine v. R.G. Kaplan, M.D.*, 241 F.3d 1272, 1276 (10th Cir. 2001). "Delays that courts have found to violate the Eight Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems." *Hunt*, 199 F.3d at 1224.

The subjective element is met when a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference requires more than mere negligence. *Sealock*, 218 F.3d at 1211. Rather, it is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Dual v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (internal citations omitted). Deliberate indifference has been equated to criminal recklessness. *Farmer*, 511 U.S. at 839-40.

<u>Objective Element</u>

In her analysis of the other defendants' motion for summary judgment, the Magistrate Judge found that the medical records did not demonstrate that Mr. Haden had "suffered any serious injury, lifelong handicap, or permanent loss as a result of periodic delays in his various medications." Recommendation of United States Magistrate Judge [#276] at 14. The affidavits of Dr. Shepard and Dr. Frantz support that finding. On the other hand, Mr. Haden believes that he did sustain physical and mental harm. I respect his beliefs about his own health.

The present motion and response, and their exhibits, were not before Judge Tafoya or this Court when she or I reviewed that initial motion for summary judgment. In any event, I conclude that I need not decide whether there is a genuine dispute of material fact concerning the seriousness of the consequences of his having missed his prescribed medications on some occasions. Suffice it to say that a physician's prescription reflects a medical judgment that the patient should receive the medication in the dosage and manner set forth in the prescription. The Court also finds that it need not reach or decide the qualified immunity and Prison Litigation Reform Act issues raised in the motion for summary judgment. It is apparent that the claim against Dr. Shepard fails based upon the subjective element of an Eighth Amendment claim.

Subjective Element

To establish the subjective element, Mr. Haden must establish that Dr. Shepard had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Further, Mr. Haden must show that it was Dr. Shepard that caused the deprivation of his rights. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Dr. Shepard has come forward with evidence in the form of his affidavit, which in turn reflects his review of the medical records as well as his recollection of Mr. Haden, that he had no involvement in the actual delivery of the medications at the facility. That is not surprising. Physicians conduct evaluations and write prescriptions. They do not accompany their patients to the drug store.

The prison setting is admittedly different from life outside the prison walls. However, Dr. Shepard's affidavit indicates that his role in Mr. Haden's care fit precisely with this common experience. On the one occasion when he was informed that Mr. Haden was not receiving his prescribed medications because the pharmacy had not received a non-formulary request, November 16, 2008, he immediately reissued prescriptions to assure that the medications would be provided. Mr. Haden has not come forward with any evidence to the contrary. Mr. Haden's affidavits do not contradict any of the statements in Dr. Shepard's affidavit concerning his lack of knowledge of, or ability to control, the administration of medications to Mr. Haden or other inmates at the facility. He has not provided any evidence that Dr. Shepard made errors in his prescriptions; or that anything he did prevented Mr. Haden from receiving his medications; or that Dr. Shepard failed to intervene when he became aware of any delay in the provision of medications to Mr. Haden.

In short, there is nothing in the record of this case that shows even arguable deliberate indifference on the part of Dr. Shepard. Therefore, there is no genuine dispute of fact regarding

the subjective element of an Eighth Amendment claim against him. Put another way, there is no issue of fact that is material to the claim against Dr. Shepard that a jury trial is needed to resolve.

**Order**

1. Defendant's motion for summary judgment [#301] is GRANTED.
2. The Court directs that a final written judgment be entered dismissing this case and all claims within it with prejudice.

DATED this 28th day of March, 2013.

BY THE COURT:

_____
R. Brooke Jackson